IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| HELIA TEC RESOURCES, INC., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | CIVIL ACTION H-09-1482 |
| | § | |
| GE&F CO., LTD., and PACIFIC LNG | § | |
| OPERATIONS LTD., CLARION FINANZ | § | |
| AG AND INTEROIL CORPORATION, | § | |
| | § | |
| Defendants, AND | § | |
| | § | |
| GE&F CO., LTD., Individually and | § | |
| as Assignee of Helia Tec | § | |
| Resources, Inc., | § | |
| | § | |
| Third Party Plaintiff, | § | |
| | § | |
| VS. | § | |
| | § | |
| CARY E. HUGHES and TIMOTHY R. | § | |
| GALLAGHER, | § | |
| | § | |
| Third Party Defendants. | § | |

## OPINION AND ORDER

Pending before the Court in the above referenced cause *inter alia* is Third-Party Defendants Cary E. Hughes ("Hughes") and Timothy R. Gallagher's ("Gallagher's") motion for reconsideration (instrument #204) of their motion for anti-suit injunction (#188).

The Court initially denied #188 (#190) on December 14, 2011 on the grounds that the case had been dismissed without prejudice for lack of jurisdiction over a necessary party, but a relevant part of the case was subsequently reinstated on September 20, 2012 (#200).

-1-

### Procedural History And Causes of Action

The procedural background of this consolidated action  along with two related state court suits is complex.

***Allegations of the Lead Case, H-09-1482***

The initial lawsuit, H-09-1482, now the lead case, alleges an unauthorized and fraudulent conveyance of Helia Tec Resources, Inc.'s ("HTR's") corporate assets by GE&F, which owns 82% of HTR's stock,[1] to the direct benefit, use and enjoyment of stockholder Pacific LNG Operations Ltd. ("Pacific") without HTR's knowledge and consent; it seeks recovery of the funds from that sale, as well as damages, and a declaratory judgment.

This lead case was filed in the undersigned judge's court on May 17, 2009 by HTR, a closely held corporation and a publicly traded company, organized under the laws of Texas with its principal place of business in Houston, Texas, against GE&F Company Ltd. ("GE&F"), organized under the laws of the Republic of South Korea with its principal place of business in that country, and Pacific, organized under the laws of the British Virgin Islands with its principal place of business in Zurich, Switzerland).  The First Amended Complaint (#5) added Defendant Clarion Finanz AG ("Clarion"), a private company believed to be organized under the laws of Switzerland, with its principal place of business in

---

[1] The complaint in H-09-1699 represents that, as two of the other three shareholders of HTR, Hughes owns 9.16% and Gallagher owns 4.58% of HTR.

Zurich, Switzerland; and InterOil Corporation ("InterOil"), a publicly traded company organized under the laws of the Yukon Territories, Canada, with an office in Texas. Cary Hughes was HTR's President and sole member of its Board of Directors at all relevant times.[2]

HTR develops domestic and international oil and gas reserves. According to the First Amended Complaint (#5), on February 25, 2005 HRT entered into an Amended and Restated Indirect Participation Interest Agreement (the "IPI Agreement") with Defendants InterOil, Pacific, Clarion Finanz AG, GE&F ("Clarion"), and others to develop through an eight-well exploration program searching for oil or gas reserves in Papua New Guinea. On February 14, 2007 HTR signed the Project Investment Agreement (the "PIA"), which required HTR to provide a $15,000,000 deposit to Pacific (the "PIA Deposit"). HTR's bank wire-transferred that sum to Pacific's bank on February 22, 2007. On June 8, 2007, Pacific assigned its 1.2% interest[3] of the IPI Agreement to HTR in exchange for a deduction of $8,000,000 from these previously wired funds. HTR claims that as of December 2008, the total value of its interest under the IPI Agreement was

---

[2] According to the complaint in H-09-1699, Gallagher was the Director of Finance of HTR.

[3] Referred to as the "HTR IPI Working Interest," it was subject to subsequent cash calls from the operator IOC, had a total cash value of $9,155,724. With the remaining deposit ($7,000,000), in December 2008 HTR had assets amounting to $16,155,724 (the "HTR Asset").

$16,155,724.

On February 18, 2009, GE&F, purporting to act with full authority as HTR's sole shareholder and corporate parent, tried to transfer HTR's 1.2% interest (HTR IPI Working Interst) back to Pacific for $8,000,000.  The transfer was effected by an assignment (Ex. A to #5) ostensibly on behalf of HTR by GE&F and was recorded in an assignment agreement and signed by Kwak Bong Seo, an authorized signatory and board member of Assignor HTR, and by Carlo Civelli, an authorized signatory and board member of Assignee Pacific.  HTR claims that the transfer was effected without its knowledge or authority[4] and that it did not have first hand knowledge of that transfer until May 7, 2009.  It also insists that the assignment in essence liquidated all of its assets and that the transfer of the funds to Korea at GE&F's direction constituted an transfer of all HTR's assets.  Pursuant to the assignment Pacific allegedly paid  GE&F, to and through a Korean account, $1,500,000 and was directed to pay the remaining purchase price to HTR through a Korean account.  Neither HTR nor its president, Hughes, has any control over the Korean account and never authorized transmission of any monies payable to HTR to any offshore entity.

---

[4] Purportedly as a result of the transfer and amid allegations of improprieties including embezzlement and misappropriation, Korean authorities halted market trading of GE&F's common shares on the Korean market, KPSDAQ, and subsequently on May 14, 2009 permanently de-listed GE&F from that public market.

On May 17, 2009 HTR filed this action against GE&F and Pacific.  In its amended complaint, filed on July 13, 2009, HTR added Defendants InterOil and Clarion and sought a declaratory judgment nullifying the assignment to Pacific and quieting title in the IPI interest in favor of HTR  as the sole owner of the IPI interest and the PIA Deposit.  HTR charged GE&F and Pacific with common law fraud, civil conspiracy, and conversion.

On June 24, 2009 HTR discovered that despite issues about the legitimacy of the Assignment and GE&F's management, Pacific transmitted the June 20, 2009 $500,000 payment to Korea instead of the HTR in Houston or the Court's registry.

**Allegations of the Third-Party Complaint (#21) in the Lead Case**

On September 10, 2009 GE&F filed a Third-Party Complaint against Third-Party Defendants Hughes and Gallagher.  It asserts that after HTR was formed on January 4, 2007 as a wholly owned subsidiary of GE&F, Hughes became not only HTR's president and sole member of its Board of Directors, but also Director and Representative Director of GE&F from July 2007-June 2008.  On behalf of HTR Hughes signed the IPI Agreement for the Papua New Guinea exploration.

Beginning in late 2007 GE&F became dissatisfied with Hughes, purportedly in part because he failed to report adequately and timely to GE&F on the business and operations of HTR and he failed to call an annual meeting of the shareholders within thirteen

months of incorporation, as required by HTR's Bylaws.  In March 2008, without notice to GE&F, Hughes left Korea and returned to the United States.  Furthermore GE&F had also made numerous demands on Hughes as the sole director to call a shareholders' meeting to elect two more members to HTR's board of directors, but Hughes had failed to do so.  Moreover in early June 2008 GE&F learned that on May 12, 2008, without GE&F's knowledge or consent, Hughes had caused to be filed with the Texas Secretary of State a Certificate of Amendment amending HTR's certificate of formation to increase the number of authorized shares of HTR from 200,000 to 1,000,000 and that 40,000 HTR shares had been issued, with 20,000 going to Hughes and 10,000 to HTR employees Gallagher, who is Hughes' nephew, and Robert Crow.

On June 18, 2008 GE&F, as majority shareholder of HTR, signed a Written Consent of Shareholders in Lieu of Special Meeting of Shareholders of Helia Tec Resources, Inc. (the "Shareholders' Consent," Ex. A to #21), which removed Hughes from the Board of Directors and elected three new directors, Kwak Bong Seo, Cho Young Man, and Lee In Seop.  That same day the new members of the Board of Directors signed a Written Consent of Directors in Lieu of Meeting of the Board of Directors of Helia Tec Resources, Inc. (the "Directors' Consent," Ex. A to #21), which removed Hughes from the office of President.  When Hughes refused to vacate HTR's offices, on July 11, 2008 HTR and GE&F filed suit against Hughes in Texas

state court. *In re Helia Tec Resources, Inc. and GE&F Ltd. v. Cary E. Hughes*, Cause No. 2008-42122, in the 164th Judicial District Court, Harris County, Texas (the "state court suit"). The state court suit asserted claims for trespass and breach of fiduciary duty and sought to enjoin Hughes from holding himself out as president of HTR and from committing further *ultra vires* acts.

In August 2008, Hughes met with representatives of HTR and GE&F in Houston, Texas. That meeting resulted in dismissal of the state court lawsuit without prejudice on August 25, 2008. The Third Party Complaint states that Hughes was permitted to remain in HTR's Houston office and was given limited authority to perform the following duties on HTR's behalf: (1) to act as an officer and president solely for HTR's Texas and U.S. operations; (2) to raise investment funds and/or find investors for working interests in the Texas properties, but he was ***not*** to have any authority for corporate affairs such as share issuance, shareholder meetings, and Board of Director meetings; (3) to help negotiate with Clarion, Pacific LNG, and InterOil to assign HTR's 1.2% IPI interest to GE&F and to convert the remaining $7 million non-refundable deposit into an additional 1% IPI interest in the Pacific Project, but Hughes was ***not*** given authority to sign any material document relating to the that project without a co-signature or approval letter from GE&F.

The Third-Party Complaint further alleges that Hughes, HTR and

GE&F worked out an agreement for Hughes' final separation from HTR. On March 1, 2009 Hughes and Gallagher executed a Settlement, Release of Claims and Indemnity Agreement ("Release Agreement, Ex. B to #21) with HTR and GE&F, under which Hughes and Gallagher relinquished their Employment Agreements with HTR and GE&F in exchange for a mutual release of claims and indemnification.  HTR and GE&F are referred to collectively as the "Company" in the Release Agreement.  Under the Release Agreement HTR's Texas assets (leases and land) were assigned to Hughes and Gallagher and HTR and GE&F would be responsible for the debts and liabilities of HTR listed on Ex. C to the Release Agreement (Ex. B to #21).  They were to pay those debts in three installments: $200,000 by March 5, 2009 and two payments of $153,576.40 each to be made on a best-efforts basis by April 1, 2009 and May 1, 2009.  Moreover Hughes and Gallagher agreed to resign all positions in the Company upon payment of the initial $200,000 and to surrender their HTR shares for ten cents per share.

On April 24, 2009, after being delayed for approximately six weeks by the Korean government's tight control of foreign exchange GE&F wired the first $200,000 installment to HTR's bank account in Houston, Texas.  Hughes and Gallagher accepted the money without objecting to the timing.

According to the Third-Party Complaint, the IPI Agreement required each investor periodically to respond to cash calls in its

proportionate share to fund the project.  InterOil issued several cash calls in 2007 and 2008.  HTR was in financial straits in its Texas operations and HTR and GE&F realized that neither of them could continue to fund HTR's portion and HTR was thus in danger of losing its $8,000,000 investment.  So on February 18, 2009 HTR and GE&F assigned to Pacific HTR's 1.2% interest in the Project for $8,000.000.  Ex. C to #21.  The payments were to be made according to a schedule, with the full amount to be paid by December 31, 2009.

On May 18, 2009, Hughes, dissatisfied with the deal he had made with HTR and GE&F, pretending to sue on HTR's behalf, filed the lead case against GE&F, falsely claiming to be HTR's president and sole board member. Third-Party Plaintiff GE&F contends that Hughes is trying to use the lead case to extract more money from GE&F, and even more by adding Clarion, Pacific, and InterOil as Defendants.  On August 4, 2009 GE&F wrote to Hughes and (1) demanded that he drop the suit because he had no authority to act on behalf of HTR; (2) insisted that Hughes provide documentation evidencing the $200,000 wire transfer on April 24, 2009 pursuant to the Release Agreement, and demonstrating that it was used to pay company debt as provided in the agreement; (3) tendered payment to Hughes and Gallagher to redeem their HTR shares; (4) asked for vendor information that would permit GE&F to send payment directly to the vendors for the remaining $307,152.80 in debt that HTR and

GE&F agreed to pay under the Release Agreement; and (5) ordered Hughes and Gallagher to vacate HTR's Houston offices immediately and to cease holding themselves out as HTR employees, officers or board members or as authorized to act in any capacity on behalf of HTR.

On August 12, 2009 Hughes and Gallagher rejected the demands. Hugh again declared that he was president of HTR. Hughes and Gallagher refused payment for their HTR shares and refused to return the certificates evidencing them. They also refused to provide evidence that the wired $200,000 had been used to pay HTR's debts or to provide evidence of vendor information ao that GE&F could pay the vendors directly the remaining $307,152.80 of company debt, and refused to vacate HTR's offices. They also asserted that GE&F was no longer HTR's majority shareholder because of alleged "debt for equity swaps" made to appease creditors. Furthermore on August 19, 2009 Hughes arranged to hold a HTR shareholder's meeting over GE&F's protests.

GE&F's Third-Party Complaint asserts causes of action for breach of Release Agreement against Hughes and Gallagher, tortious interference with contract against Hughes, and trespass against Hughes and Gallagher, and it seeks a declaratory judgment and injunctive relief against further *ultra vires* acts by Hughes.

**Allegations of the Second Case, H-09-1699**

On June 3, 2009, less than a month after the lead case was

filed, Hughes and Gallagher filed H-09-1699, which was assigned to
Judge Ellison, against GE&F.  They asserted claims arising out of
the same transactions and occurrences involving the Papua New
Guinea project as the lead case, but instead of seeking rescission
of the fraudulent conveyance to Pacific and a declaration of
rights, this second suit alleges breached fiduciary duty by GE&F as
the majority shareholder owed to minority shareholder Plaintiffs,
Hughes and Gallagher, fraud, and conversion, and it seeks a
declaratory judgment of Hughes and Gallagher's right in their
individual capacities to bring claims for damages against GE&F.
Their complaint asserts that in 2008-09 a number of disputes and
disagreements arose between Plaintiffs Hughes and Gallagher and
Defendants HTR and GE&F, which were resolved by the March 1, 2009
Release Agreement (Ex. B to #21)  The suit claims that HTR and GE&F
breached the agreement and thereby damaged Hughes and Gallagher.
Moreover Hughes and Gallagher charge that GE&F attempted to release
the claims of other equity owners by release language in the
Assignment:  "The Assignor [HTR and GE&F] collectively and each of
the Assignor parties individually and for itself and *on behalf of
its equity owners* . . . does collectively and each individually
hereby release, acquit and forever discharge the Assignee, Clarion
Finanz AG, [and] the Company [HTR and GE&F, collectively]. . . ."
Hughes and Gallagher seek a declaratory judgment that the release
language of the Assignment is invalid and unenforceable, as well as

imposition of a trust on $6,500,000 in payments that were scheduled to be paid to GE&F in 2009.

On March 8, 2010, Hughes and Gallagher moved to consolidate the two cases (#47), and the Court granted the motion (#57).

On September 24, 2010 Defendants Pacific LNG Operations Ltd., and Defendant Clarion was dismissed without prejudice for lack of personal jurisdiction (#80).  Subsequently Defendants InterOil and GE&F separately moved to dismiss the lead suit based on the absence of Pacific as an indispensable party under Rule 19.  On September 20, 2011, the Court granted those motions and dismissed the case. #184 and 185.  After the Court granted Hughes and Gallagher's Rule 60(b) motion to correct final order of dismissal on the grounds of inadvertence and mistake (#191, 200), the case was reopened as to the now reinstated claims to which Pacific was not a necessary party (#207).  (Only the claims relating to the assignment of the Pacific Project Interest and the Papua New Guinea project remain dismissed for lack of personal jurisdiction.)  With this partial reinstatement of the consolidated action, the claims to be resolved are(1) Hughes and Gallagher's claims in what was H-09-1699 before consolidation against majority shareholder EF&G alleging breach of fiduciary duty to them as minority shareholders in HTR and for declaratory judgment that they have a right in their individual capacities to bring claims for damages against GE&F for fraud and conversion (#1 in H-09-1699); and (2) GE&F's Third-Party Complaint

(#21) in H-09-1482 against Hughes and Gallagher.

### Hughes and Gallagher's Motion for Reconsideration of Motion for Anti-Suit Injunction (#204)

The pending motion for reconsideration seeks to revive Hughes and Gallagher's earlier motion for anti-suit injunction (#188, now Ex. A to #204), which was never reviewed on its merits, but dismissed when the Court closed the case because of lack of personal jurisdiction over H-09-1482.  It involves a parallel state court suit, a shareholder derivative action styled *HSC Holdings, f/k/a GE&F Co. Ltd., Individually and Derivatively as Shareholder of Helia Tec Resources, Inc. v. Cary E. Hughes, Timothy R. Gallagher, Robert R. Crow, Noemi F. Licarte, Mastodon Operating Company, LLC, Mastodon Energy Partners, LLC, Sendex Energy, LLC and Helia Tec Resources, Inc.*, Cause No. 11-10-221121 (copy of Original Petition attached as Ex. 1 to #188)(asserting claims for declaratory judgment, breach of the Release agreement, breach of fiduciary duty, statutory fraud, common law fraud, and civil conspiracy), filed in the 135th Judicial Court in Dewitt County, Texas (the "Dewitt case"), filed after this federal court case was dismissed, terminated and closed on September 20, 2011.  The Dewitt case asserts some of the same claims that have now been reinstated in the consolidated federal case.  The Dewitt case was removed to federal court, but on September 18, 2012 it was remanded to the Dewitt County District Court.  GE&F opposes the motion for

reconsideration on the underlying motion's lack of merit.   The Court grants the motion for reconsideration, reinstates Hughes and Gallagher's motion for anti-suit injunction (#188), and reviews it on the merits.

**Hughes and Gallagher's Motion for Anti-Suit Injunction (#188)**

*Relevant Law*

The All Writs Act, 28 U.S.C. § 1651(a), states, "The Supreme Court and all courts established by Act of Congress may issue a;; writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." Nevertheless there are limitations on the All Writs Act. "The Anti-Injunction Act, 28 U.S.C. § 2283, prohibits federal courts from enjoining state court proceedings except in three narrowly tailored situations:  "A court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments." Exceptions to the Anti-Injunction Act are narrowly construed. *Next Level Communications LP v. DSC Communications Corp.*. 179 F.3d 244, 249 (5th Cir. 1999), *citing Chick Kam Choo v. Exxon Corp.*, 486 U.S. 140, 146 (1988).  They are not to "be enlarged by loose statutory construction." *Smith v. Bayer Corp.*, 131 S. Ct. 2368, 2375 (2011).

-14-

Hughes and Gallagher have not asserted a claim under any statute that expressly authorizes injunctive relief to fall with the first exception to the Anti-Injunction Act.

Regarding an injunction under the second exception, "necessary in aid of its jurisdiction," the "'general rule remains . . . that an injunction cannot issue to restrain a state action in personam involving the same subject matter from going on at the same time.'" *Gibbs v. Lufkin Industries, Inc.*, 487 Fed. Appx. 916, 920 (5th Cir. Sept. 7, 2012), *quoting* 17A Charles Alan Wright *et al,*, *Fed. Prac. & Proc.* § 4425 (3d ed. database updated Apr. 2012).  "The law is well settled . . . that 'in no event may the 'aid of jurisdiction exception' be invoked merely because of the prospect that a concurrent state proceeding might result in a judgment inconsistent with the judgment of the district court.'"  *Phillips v/ Charles Schreiner Bank*, 894 F.2d 127, 132 (5th Cir. 1990), *citing Texas v. U.S.*, 837 F.2d 184, 186-87 (5th Cir. 1990), *cert. dneied*, 488 U.S. 821 (1988), *citing Atlantic Coast Line R. Co. v. Brotherhood of Locomotive Engineers*, 398 U.S. 281, 295-96 (1970).  The Fifth Circuit has opined regarding this exception,

> [W]e also note that the second of the three exceptions in the Anti-Injunction Act contains the same language as the All Writs Act, insofar as it permits a federal court to issue an injunction "where necessary in aid of its jurisdiction."  In cases decided under this exception, courts have interpreted the language narrowly, finding a threat to the court's jurisdiction only where a state proceeding threatens to dispose of property that forms the basis for federal in rem jurisdiction, *see, e.g., Signal Properties, Inc. v. Farha*, 482 F.2d 1136, 1140

-15-

(5th Cir. 1973), or where the state proceeding threatens the continuing superintendence by a federal court, such as in a school desegregation case.  *See* Wright & Miller, *Federal Practice & Procedure* § 4225.  In no event may the "aid of jurisdiction" exception be invoked merely because of the prospect that a concurrent state proceeding might result in a judgment inconsistent with the federal court's decision.  *See Atlantic Coast Line R. C. v. Brotherhood of Locomotive Engineers*, 398 U.S. 281, 295-96 (1970).

*State of Texas v. U.S.*, 837 F.2d 184, 186 n.4 (5th Cir. 1988), *cert. denied*, 488 U.S. 821 (1988); *Royal Ins. Co. of America v. Quinn-L Capital Corp.*, 960 F.2d 1286, 1298 (5th Cir. 1992).  The instant action is not *in rem* and does not involve any "superintendence" jurisdiction, and the facts and circumstances do not meet the narrow construction of the second exception.

### Hughes and Gallagher's motion

Claiming that the Dewitt suit arises from the same transaction at issue here and seeking an injunction to stop the state court action, Hughes and Gallagher argue that the Dewitt suit's claims either are already before this Court or constitute compulsory counterclaims that GE&F is barred from asserting outside this lawsuit.  Fed. R. Civ. P. 13(a)(1)("A pleading must state as a counterclaim any claim that--at the time of its service--the pleader has against an opposing party if the claim . . . arises out of the transaction or occurrence that is the subject matter of the opposing party's claim . . . ").  They also assert that the filing of the Dewitt suit includes the same facts, circumstances,

and claims in the proposed amended answer as well as counterclaims raised in GE&F's motion for leave to file, which Magistrate Judge Francis denied as untimely[5] (#177, 183).  Hughes and Gallagher charge that the filing of the Dewitt case "is wholly consistent with GE&F's multi-year strategy of engaging in vexatious and oppressive litigation tactics for the purpose of harassment and abuse, and with the specific intention of avoiding judgment and justice in this Court."  #188 at p. 3.  Hughes and Gallagher ask the Court to enjoin the Dewitt suit and to bar GE&F from filing in any other jurisdiction any more suits arising from the same transactions or series of transactions that form the basis of this action.  In their motion Hughes and Gallagher provide a detailed summary of EG&F's, and subsequently HSC's, abusive participation in this litigation, supported by the record, in failing to present its witnesses for deposition, failing to comply with discovery requests, failing to comply with the Texas and Federal Rules, creating difficulties and a lack of communication that caused its attorney to withdraw, ignoring court orders, acting in a manner that caused the Court to impose numerous sanctions, bringing in new counsel after all deadlines set by the Court had expired, and then attempting to turn back the clock two years to rectify its failures and abuses.  They maintain that the Dewitt lawsuit is just another

---

[5] Judge Stacy found the claims untimely under *this case's* scheduling order, not on limitations grounds.

example of GR&F's abusive conduct.

Hughes and Gallagher maintain that this Court may grant an anti-suit injunction to enjoin the parties before it from litigating in another court where litigation outside the Court would (1) frustrate a policy of this Court; (2) be vexatious or oppressive; (3) threaten this Court's jurisdiction, or (4) prejudice other equitable considerations. *In re Unterweser Reederei Gmbh*, 428 F.2d 888, 89o (5ᵗʰ Cir. 1970), *aff'd en banc on rehearing*, 446b F.2d 907 (1971), *rev'd on other grounds sub nom. M/S Bremen v. Zapata Off-Shore* Co., 407 U.S. 1 (1972); *Bethell v. Peace*, 441 F.2d 495, 498 (5ᵗʰ Cir. 1971)

Hughes and Gallagher argue that GE&F's actions are a threat to the policies and express orders of this Court in its efforts to circumvent its decisions and sanctions.  They insist that rather that seeking to pursue the same, inherently related claims in another forum, they should remain here to have them resolved by this Court.  The Dewitt case was filed more than two years after this lawsuit, after GE&F has engaged in strategic abuse and delay, and it is both an afront to the Court's jurisdiction and prejudicial to Hughes and Gallagher.  They also claim that they have been effectively barred fro obtaining employment during the duration of this litigation.  GE&F will only multiply that prejudice by filing in another forum

***EF&G's Response (#189)***

EF&G points out that under the Anti-Injunction Act the Court has no discretion or authority to enjoin a state court proceeding unless it fits one of the statute's three exceptions, but Hughes and Gallagher fail to identify an exception applicable here. Furthermore they misstate the legal standard and the nature of the Court's authority to enjoin EF&G from proceeding with claims that were never litigated and never decided in this case.  The motion must be denied.

EF&G insists there is not applicable federal statute that provides an exception to the Anti-Injunction Act and authorizes the Court t enjoin it from proceeding with the Dewitt state court suit. Federal Rule of Civil Procedure 13(a) is not a statutory exception to the Anti-Injunction Act.  *Seattle Totems Hockey Club, Inc. v. National Hockey League*, 652 F.2d 852, 855 n.5 (9th Cir. 1981)("Rule 13(a) has been held not to create an express statutory exception to the proscriptions of § 2283 and, accordingly, a federal court is barred by a § 2283 from enjoining a party from proceeding in state court on a claim that should have been pleaded as a compulsory counterclaim in a prior federal suit."), *citing Nolen v. Hammet Co., Inc.*, 56 F.R.D. 361, 362 (D.S.C. 1972), and 6 C. Wright & A. Miller, *Federal Practice and Procedure* § 1418 at 106..

The last exception is commonly known as the "'relitigation exception" to the Anti-Injunction Act and "is founded in the well-

recognized concepts of *res judicata* and collateral estoppel.'"
*Id., citing id.* at 147; *Duffy & McGovern Accommodation Sesrvices v.
QCI Marine Offshore, Inc.*, 448 F.3d 825, 828 (5th Cir. 2006)("a
federal court can enjoin state proceedings threatening to ignore an
earlier, preclusive federal court order."). The Fifth Circuit
applies a four-part test to determine whether the relitigation
exception applies: "(1) 'the parties in a later action must be
identical to (or at least in privity with) the parties in the prior
action'; (2) 'the judgment in the prior action must have been
rendered by a court of competent jurisdiction'; (3) 'the prior
judgment must have concluded with a final judgment on the merits';
and (4) 'the same claim or cause of action must be involved in both
suits.'" *Liberty Mutual Ins. Co. v. Gunderson*, 305 F3d. Appx. 170,
175 (5th Cir. Nov. 25, 2008), *quoting Regions Bank of Louisiana v.
Rivet*, 224 F.3d 483, 488 (5th Cir. 2000). This Court has not issued
a final judgment on the merits on claims that are raised in the
Dewitt case, so the relitigation exception does not apply.

Accordingly, for the reasons state above, the Court

ORDERS that Hughes and Gallagher's motion for reconsideration is GRANTED and their motion for anti-suit injunction (#188) is REINSTATED. After reviewing the briefs and the applicable law, the Court

ORDERS that the motion for anti-suit injunction (#188) is DENIED.

**SIGNED** at Houston, Texas, this  19th  day of  June , 2013.

_____
MELINDA HARMON
UNITED STATES DISTRICT JUDGE